IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

**APR 22 2021**

ARTHUR JOHNSTON
BY_____ DEPUTY

UNITED STATES OF AMERICA

v.

CRIMINAL NO. 3:21-cr-39-CWR-FKB

ANTHONY KELLEY

18 U.S.C. § 1343

**The United States charges:**

At all times relevant to this Information:

INTRODUCTION

1.      Defendant **ANTHONY KELLEY ("KELLEY")** is a resident of Mississippi who owned and instructed at Trendsetters Barber College ("Trendsetters"), providing Barber-Stylist, Barber Instructor, and Master Barber courses.  Trendsetters' primary place of business is in Jackson, Mississippi.  The Defendant  owned and instructed at Trendsetters during all relevant times included in this Information.

2.      On or about January 6, 2012, **KELLEY** assumed ownership of Trendsetters from another individual.  **KELLEY** identifies himself as the owner, director, and instructor of Trendsetters.

3.      Some of the students attending courses at Trendsetters included individuals that were entitled to educational benefits provided by the United States Department of Veterans Affairs ("the VA").  These individuals ("beneficiaries") were entitled to educational benefits either under Title 38, United States Code, Chapter 33 ("Post-9/11 GI Bill") or under Title 38, United States Code, Chapter 31 (Vocational Rehabilitation and Employment ("VRE")) (collectively, "VA educational programs").

4.      Trendsetters was initially certified by the VA and the State Approving Agency ("SAA") in 1987.  This initial certification qualified the owners of Trendsetters to accept educational benefits through the VA educational programs for the Barber-Stylist and Barber-Instructor courses.

5.      Educational benefits under the GI Bill program may be paid to non-institute of higher learning, non-degree programs including non-college degree schools, on-the-job training ("OJT")/apprenticeship programs, and flight programs. Full tuition and fees are paid to the institution at the beginning of the course. The beneficiary of the GI Bill also receives a monthly housing allowance based on locality. The beneficiary receiving benefits must meet the school's standards of attendance, conduct, and progress.

6.      Educational benefits under the VRE program are designed to cover employment-oriented programs that assist beneficiaries with service-connected disabilities by offering services and assistance to help them prepare for, find, and keep suitable employment. Suitable employment is work that is within the beneficiary's physical, mental, and emotional capabilities and matches their patterns of skills, abilities, and interests.

7.      According to the VA's School Certifying Official Handbook, full-time programs are measured as eighteen (18) clock hours per week if classroom instruction predominates and twenty-two (22) clock hours per work if shop practice predominates. The VA will convert clock hours to credit and then calculate the rate of pursuit to determine whether the beneficiary is entitled to monthly housing allowance ("MHA") benefits. The MHA is paid if the rate of pursuit is calculated as being greater than 50%. Students attending class less than this part-time interval are not eligible for MHA. An MHA is paid directly to the student at the beginning of each month for the previous month. MHA will only be paid while the student is not on active duty. The MHA is based upon the Department of Defense's Basic Allowance for Housing ("BAH") for an "E-5 with dependents" and the zip code of the campus or training location where the student physically attends the majority of their courses. The funds are electronically transferred into the beneficiary's account.

8.      The laws in the State of Mississippi governing the profession of barbering are codified in Title 73, Chapter 5 of the Mississippi Code Annotated. Mississippi law requires basic Barber-Stylist students to attend 1,500 hours at a barbering school approved by the State Board of

2

Bar Examiners.  For a Barber Instructor, the student must attend an additional 600 hours of training at such a barbering school if they have more than two (2) years of experience, or an additional 1,000 hours of training at such a barbering school if they have less than two (2) years of experience.

9.      The law requires all courses to be approved by the Mississippi Board of Barber Examiners.

10.     Between October 2016 and March 2019, the Master Barber course was not an authorized course of study approved by the Mississippi Board of Barber Examiners.  Approval of a course by the Mississippi Board of Barber Examiners is a prerequisite for SAA approval.

11.     In order to qualify for disbursement of VA educational benefits, a course must be approved by the SAA.  The application for the SAA includes institution information, a list of the programs that the institution would like approved, modes of instruction, and a requirement to have the course catalogue reviewed.  When applying to the SAA, the representative on behalf of the institution certifies, among other things, that: (1) "[t]he programs, curriculum, and instruction are consistent in quality, content, and length with similar programs in public schools and other private schools in the state, with recognized standards"; and (2) "[t]his institution does not use erroneous, deceptive, or misleading practices nor does it advertise 'VA' or 'School' approval."

12.     In order to disburse VA educational benefits, a VA Form 22-1999, *Enrollment Certification*, must be accomplished by the educational institution and provided to the VA.  This form includes, among other things, identifying information about the student, enrollment data, and multiple certifications from the educational institution.  Certifications on the VA Form 22-1999 include, but are not limited to, (1) the "institution has exercised reasonable diligence in meeting all applicable requirements of Title 38, U.S. Code, and any failure by the institution to meet any requirements of the law will be reported promptly to [the] VA; and (2) "[t]he course or courses certified are approved by the State Approving Agency and are generally acceptable to meet requirements for the student's educational, professional, or vocational objective."

## THE SCHEME AND ARTIFICE TO DEFRAUD

13.     Beginning at least as early as October 2016 and continuing through March 2019, in Hinds County, in the Northern Division of the Southern District of Mississippi, and elsewhere, the defendant, **ANTHONY KELLEY**, aided and abetted by others known and unknown to the United States, did knowingly and intentionally devise a scheme and artifice to defraud the VA by causing wire transfers of VA educational benefits under false and fraudulent pretenses, representations, and promises, thereby misappropriating federal money for his own benefit and the benefit of others.

14.     At the time that **KELLEY** assumed control of Trendsetters, Trendsetters offered a Barber-Stylist course and a Barber Instructor course. On or about October 1, 2016, **KELLEY** added a Master Barber course to the Trendsetters catalogue. As listed in the Trendsetters course catalogue, the Master Barber course had a mandatory minimum requirement of 1,500 hours at the cost of $13,000.00.

15.     At the time that the course was added to **KELLEY**'s curricula in October 2016 and continuing through at least March 2019, the Board of Barber Examiners did not recognize the existence of a Master Barber course and this was not an authorized course of study. **KELLEY** also did not seek the approval of the Board of Barber Examiners to offer a Master Barber course at Trendsetters. Without this approval, the SAA could not legitimately certify the course to receive funds for VA educational benefits.

16.     At least two students capable of receiving VA educational benefits participated in the Master Barber course.

a.     Student T.D. attended the Master Barber course from on or about October 17, 2016 through on or about November 17, 2017. The VA Form 22-1999, *Enrollment Certification*, that initiated T.D.'s enrollment was signed by **KELLEY** and faxed to the VA on or about October 17, 2016 and was stamped received by the VA on or about October 20, 2016. T.D.'s Chapter 33 educational benefits under the Post-9/11 GI Bill were applied toward the program

4

at the cost of $13,000.00. This amount was sent by wire transfer from the VA to the Trendsetters bank account on November 23, 2016, as described and charged in Count 1 of this Information. Because T.D. was listed as a full-time student on his VA Form 22-1999, T.D. was also paid MHA.

b.  Student D.G. attended the Master Barber course from on or about March 5, 2018 to on or about March 5, 2019. The VA Form 22-1999, *Enrollment Certification*, that initiated D.G.'s enrollment was signed by **KELLEY** and faxed to the VA on or about March 5, 2018 and was stamped received by the VA on or about March 6, 2018. D.G.'s Chapter 33 educational benefits under the Post-9/11 GI Bill were applied toward the program at the cost of $13,000. This amount was sent by wire transfer from the VA to the Trendsetters bank account on March 30, 2018, as described and charged in Count 2 of this Information. Because D.G. was listed as a full-time student on his VA Form 22-1999, D.G. was also paid MHA.

17.  On or about October 17, 2018, the SAA formally withdrew its approval of Trendsetters' eligibility to participate in the VA's educational benefits program as a result of discovering multiple discrepancies with the ability of Trendsetters to meet the established requirements of the SAA.

18.  It was part of the scheme and artifice to defraud that defendant **KELLEY** created a Master Barber course that was not approved by the Mississippi Board of Barber Examiners. Defendant **KELLEY** knew that the Master Barber course was not authorized under law. Knowing it was not authorized under the law, defendant **KELLEY** never applied for approval of the course by the Board of Barber Examiners. It was further part of the scheme and artifice to defraud that defendant **KELLEY** offered the course to students, including students receiving VA educational benefits, to receive compensation.

19.  It was part of the scheme and artifice to defraud that defendant **KELLEY** submitted

5

multiple documents to the SAA and the VA asserting that the Master Barber course was a program that was approved by the Board of Barber Examiners.  It was further part of the scheme and artifice to defraud that defendant **KELLEY** faxed multiple VA Forms 22-1999 to the VA in order to receive payments to Trendsetters for students enrolled in **KELLEY**'s fraudulently created Master Barber course.  As a result of defendant **KELLEY**'s false and fraudulent pretenses, representations, and promises, the VA wire transferred money to **KELLEY** on at least two separate occasions as charged in Counts 1 and 2 of this Information.

20.     It was part of the scheme and artifice to defraud that defendant **KELLEY** knew and intended that his false and fraudulent pretenses, representations, and promises would induce the VA to disburse money to him and would cause them to suffer financial losses while he and others benefitted from the fraudulent scheme.

## VA APPROVAL OF CHAPTER 33 (POST-9/11 GI BILL) EDUCATIONAL BENEFITS AND INTERSTATE TRANSFER OF FUNDS

21.     When the VA grants benefits to veterans, the last step in the benefits process is claims authorization.  Claims authorization is performed by trained personnel assigned to VA Regional Offices in Oklahoma, Missouri, and New York or from authorized telework locations. When authorizing education claims, VA staff use the Chapter 33 system to review evidence, check for quality, and complete the claim.

22.     When a claim is authorized in Chapter 33, the data is transmitted to the Benefits Delivery Network (BDN) system in Chicago, Illinois.  Once the data is received in the BDN, payments are transmitted to the United States Treasury system in Kansas City, Missouri.  From Kansas City, Missouri, payments are transmitted either by paper or electronic deposit to veterans or school accounts at banks throughout the United States.

## COUNTS 1-2

The United States realleges and reincorporates by reference the allegations set forth in paragraphs 1 through 22.

Beginning at least as early as October 2016 and continuing through March 2019, in Hinds County, in the Northern Division of the Southern District of Mississippi, and elsewhere, defendant **KELLEY**, aided and abetted by others known and unknown to the United States, unlawfully, willfully, and knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises.  In executing this scheme and artifice to defraud, **KELLEY** knowingly and willfully obtained money by means of materially false and fraudulent representations, pretenses, and promises, and in furtherance thereof, did cause electronic wire communications to be transmitted in interstate commerce for the purpose of executing the scheme, and attempted to do so, in that **KELLEY** initiated fraudulent transactions transferring funds through the United States Treasury system in Kansas City, Missouri, as follows:

| COUNT | DATE OF WIRE (On or about) | DESCRIPTION |
|---|---|---|
| 1 | November 23, 2016 | Interstate wire transfer of funds in the amount of $13,000.00 from the Department of Veterans Affairs, through the United States Treasury system in Kansas City, Missouri, to **KELLEY**'s Trendsetters account at Trustmark National Bank in Jackson, Mississippi, Bank Account Number XXXXXX0587. |
| 2 | March 30, 2018 | Interstate wire transfer of funds in the amount of $13,000.00 from the Department of Veterans Affairs, through the United States Treasury system in Kansas City, Missouri, to **KELLEY**'s Trendsetters account at Trustmark National Bank in Jackson, Mississippi, Bank Account Number XXXXXX0587. |

All in violation of Title 18, United States Code, Sections 1343, 1349 and 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, the United States gives notice to the Defendant that upon conviction of Counts One or Two of this Information, all property, real or personal, which constitutes or is derived from proceeds traceable to the violation, is subject to forfeiture. The Defendant is notified that in the event that property subject to forfeiture, as a result of any act or omission of the Defendant,

(i)     cannot be located upon the exercise of due diligence;
(ii)    has been transferred or sold to, or deposited with, a third party;
(iii)   has been placed beyond the jurisdiction of the court;
(iv)    has been substantially diminished in value; or
(v)     has been commingled with other property that cannot be divided without difficulty;

then the United States will seek to forfeit any other property of the Defendant up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c).

DARREN J. LAMARCA
Acting United States Attorney

8